_Randal S. Mashburn_
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 8/21/2014



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| MAXINE DOLORES BENNETT, | ) | Case Number: 3:14-00820 |
|     Debtor. | ) | Chapter 7 |
| | ) | Randal S. Mashburn |
| | ) | |
| | ) | |
| SUNTRUST BANK, | ) | |
|     Plaintiff | ) | |
| v. | ) | Adversary No.: 14-90079 |
| | ) | |
| MAXINE DOLORES BENNETT, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

A state court judgment reciting a key dischargeability phrase from the applicable bankruptcy statute does not automatically have preclusive effect in bankruptcy court. As this case demonstrates, merely inserting the word "fraud" into a state court judgment will not necessarily be enough to assure the nondischargeability of a debt.

Relying upon principles of collateral estoppel, SunTrust Bank filed a summary judgment motion asking this Court to find Maxine Dolores Bennett's debt nondischargeable based upon a prior judgment of the Circuit Court of Davidson County, Tennessee. Ms. Bennett, acting *pro se*, filed various documents indicating that she opposed summary judgment. Following a July 8, 2014, hearing, the Court entered an order denying the cross-summary judgment motions.[1] This memorandum opinion sets forth the reasons for that action.

---

[1] Although Ms. Bennett labeled one of her *pro se* filings as "Defendant's Motion for Summary Judgment," it is really just a further response to SunTrust's motion. She primarily asks the Court to give due consideration to her financial status and "plea of ignorance" as well as her continuing denial of any intentional involvement in fraudulent activity. There is no legal basis asserted for granting summary judgment in her favor. While this matter is technically before the Court on cross-motions for summary judgment, no real argument has been made by Ms. Bennett for dismissing the case and ruling for her without a trial.

1

## BACKGROUND

In 2005, SunTrust Bank filed a complaint in state court, alleging that Ms. Bennett "received, endorsed, and presented" to SunTrust two checks that were fraudulent. SunTrust asserted that Ms. Bennett was liable for the amount of the fraudulent checks under the "Rules and Regulations for Deposit Accounts," liable under Tennessee's version of the Uniform Commercial Code, and also liable as the "endorser and transferor of the fraudulent checks." The complaint further alleged that Ms. Bennett "obtained this money by false pretenses, a false representation, or actual fraud."

Exactly how Ms. Bennett responded to the state court lawsuit is not totally clear because the parties submitted only the complaint (provided by Ms. Bennett) and the state court judgment (provided by SunTrust) as a part of the summary judgment process. However, it is apparent from the state court order that Ms. Bennett, acting *pro se* in state court as well, did not respond to some or all of the court filings submitted by SunTrust. The state court entered a judgment on May 25, 2006, finding:

> This cause came to be heard on May 12, 2006, upon plaintiff's motion for summary judgment, plaintiff's specification of material facts, plaintiff's supporting brief, the requests for admission propounded by plaintiff, the statement of plaintiff's counsel and the entire record herein; from all of which it appears to the Court that defendant was duly served with requests for admission, but failed to file her answers or submit other responsive pleadings within the time required by law, and the items set forth in the requests shall be deemed admitted. This is a suit for overdrafts on defendant's account with plaintiff, to which defendant has not interposed a valid legal defense. Defendant, received, endorsed and presented to plaintiff two large checks for $98,313.87 and $108,313.87. The instruments were fraudulent and were returned, resulting in an overdraft of $86,949.24. Defendant contends she is the victim of a "Nigerian Scam," but she is legally liable to plaintiff under the Uniform Commercial code, § 47-3-415, § 416 and §417, as an endorser, transferor, and presenter. In addition, defendant is liable to plaintiff contractually. Plaintiff filed a motion for summary judgment, with supporting specification of material facts and a brief, to which defendant has not responded. From all of which it appears to the Court that plaintiff is entitled to a

Case 3:14-ap-90079   Doc 22   Filed 08/22/14   Entered 08/22/14 07:43:33   Desc Main
Document      Page 2 of 13

summary judgment as a matter of law, there being no genuine issue of material fact.

It is, accordingly, ORDERED, ADJUDGED AND DECREED that defendant, Maxine Dolores Bennett, pay to plaintiff, SunTrust Bank, the sum of $86,949.24 plus pre-judgment interest from December 10, 2004 to date of $12,339.65, and plaintiff's attorney fees of $7,500, for a total of $106,788.89 for monies obtained by false pretenses, a false representation, or actual fraud; and that the costs of this cause be assessed to defendant; for all which execution may issue.

[State Court Order, p. 1-2].

Ms. Bennett filed a Chapter 7 bankruptcy petition on February 4, 2014, and SunTrust then initiated this adversary proceeding. SunTrust's bankruptcy complaint alleges that the debtor's obligations to the bank should be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as well as other code provisions not relevant to the summary judgment motion.[2] The key allegation is that Ms. Bennett deposited two counterfeit checks in September and October of 2004, totaling $206,627.74, into her SunTrust account and then made various withdrawals against those checks. The counterfeit checks resulted in an overdraft of $86,929.44, which is the basis for the primary damages suffered by SunTrust.

Ms. Bennett replied to the adversary complaint stating that she was the victim of a "Nigerian Scam." While her court filings have some procedural flaws, her version of what happened is relatively clear. Ms. Bennett says she was unaware that the checks were counterfeit and that she was an even bigger victim of the fraud than SunTrust. Ms. Bennett says that she lost more than $100,000 of her own money when SunTrust exercised its setoff rights after the checks bounced. She claims that the checks came from her adopted daughter's alleged uncle to help pay educational and other expenses. In short, Ms. Bennett contends that she did not

---

[2] The dischargeability complaint also relies upon 11 U.S.C. § 523(a)(2)(B) and (a)(4). Technically, SunTrust cited those sections along with § 523(a)(2)(A) in the motion for summary judgment. However, the only serious argument made by SunTrust that collateral estoppel applies in this case is tied to the state court's finding of liability on the part of Mrs. Bennett for "monies obtained by false pretenses, a false representation, or actual fraud," which is the language of § 523(a)(2)(A). There is nothing in the state court judgment that could be construed as involving a false financial statement under 11 U.S.C. § 523(a)(2)(B) or actions in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. §. 523(a)(4). While SunTrust is free to attempt to prove at trial any of the claims asserted, nothing presented to the Court thus far would indicate that anything other than § 523(a)(2(A) will ultimately be an issue in this matter. In any event, no basis has been asserted by SunTrust for summary judgment on these other grounds.

3

believe the checks were counterfeit when she presented them to the bank for deposit. The result, according to Ms. Bennett, is that she is now virtually destitute after falling victim to the same scam that caused SunTrust's loss.

SunTrust's motion for summary judgment asserts that the state court's finding that the debtor obtained the monies "by false pretenses, a false representation, or actual fraud" is the precise issue to be determined by the bankruptcy court and that Ms. Bennett is collaterally estopped from contesting this issue in the nondischargeability proceedings.

Ms. Bennett filed a response to the motion, again stating that she received no benefit from the funds and that there was no "deceit, false representation or malice" when she deposited the funds in her SunTrust account. Thus, the issue on summary judgment is whether principles of collateral estoppel bar Ms. Bennett from denying she committed "false pretenses, a false representation or actual fraud."

## DISCUSSION

### A. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Federal Rules of Bankruptcy Procedure 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy,* 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 (1970)). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson,* 477 U.S. at 250–52. This standard does not change when both parties move for summary judgment. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991) "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States (In re Wiley),* 20 F.3d 222, 224 (6th Cir. 1994).

If the state court judgment had not been entered, there would be no question that summary judgment should be denied. Material facts, including intent, remain in dispute. The thrust of SunTrust's motion for summary judgment is not that Ms. Bennett acknowledges the fraud but rather that she is estopped to deny the fraud based on the state court judgment. According to SunTrust, since collateral estoppel applies, whatever material facts Ms. Bennett disputes are irrelevant since they have already been decided by the state court. Therefore, this Court's ruling on summary judgment is entirely dependent on an examination of the preclusive effect of the state court judgment.

### B. Collateral Estoppel

Collateral estoppel, or issue preclusion, is an "extension" of the doctrine of res judicata, the purpose of which is to relieve the parties of multiple lawsuits, conserve judicial resources, and promote finality by preventing inconsistent decisions. *Allen v. McCurry,* 449 U.S. 90 (1980). It derives from 28 U.S.C. § 1738, which provides that "judicial proceedings ... [of any State] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... [.]" 28 U.S.C. § 1738 (2006). Federal courts must, accordingly, give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[,]" *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984), and if a claim or issue would be barred under state law, the judgment in question is entitled to preclusive effect. *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 386 (1985); *Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir. 1997).

Additionally, the U.S. Supreme Court has held that, although the bankruptcy court has exclusive jurisdiction over actions to determine dischargeability, if a state court, in the course of adjudicating state law questions, also determines factual issues with standards identical to those in § 523(a), collateral estoppel bars relitigation of those issues by the bankruptcy court in § 523(a) actions. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991). The Sixth Circuit has previously found that the elements necessary to prove fraud under Tennessee law are fundamentally the same as the elements necessary to prove fraud under 11 U.S.C. § 523(a)(2). *See In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995) (agreeing with bankruptcy court that elements of § 523(a)(2)(A) are "virtually identical" to elements of Tennessee's fraud cause of action). Thus, in this case, if Tennessee courts would accord the judgment preclusive effect, then this Court must do likewise. *Marrese,* 470 U.S. at 386; *In re Calvert,* 105 F.3d at 317.

5

Under Tennessee law, collateral estoppel bars relitigation by the same parties of legal or factual issues actually raised and determined in an earlier proceeding whereby the court's decision is conclusive against the parties in subsequent proceedings. *Mullins v. State,* 294 S.W.3d 529, 534 (Tenn. 2009); *Gibson v. Trant,* 58 S.W.3d 103, 113 (Tenn. 2001) (holding that collateral estoppel applies to both issues of law and issues of fact). The party asserting collateral estoppel bears the burden of proof "that the issue was, in fact, determined in a prior suit between the same parties," *Dickerson v. Godfrey,* 825 S.W.2d 692, 695 (Tenn. 1992), by demonstrating the following:

> (1) that the issue sought to be precluded is identical to an issue decided in an earlier proceeding; (2) that the issue sought to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins,* 294 S.W.3d at 535. Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment. *State v. Thompson,* 285 S.W.3d 840, 848 (Tenn. 2009); *Dickerson v. Godfrey,* 825 S.W.2d at 695.

Thus, it is clear that the preclusive effect of a state court judgment can be determinative of a dischargeability case, and it is likewise clear that Tennessee law on collateral estoppel will govern. In that regard, there is no dispute that the state court judgment is a final judgment and that the parties are the same. The critical issues are: whether the fraud issue in this adversary proceeding was actually litigated in the state court case, and whether the fraud issue was necessary to the state court judgment. *Trinity Inds., Inc. v. McKinnon Bridge Co., Inc.,* 147 S.W.3d 225, 232 (Tenn. Ct. App. 2003).

### 1. Actually Litigated

In Tennessee, "[f]or an issue to be 'actually litigated' for the purpose of applying the doctrine of collateral estoppel, it must have been 'properly raised, by the pleadings or otherwise, and ... submitted for determination, and ... determined.'" *Mullins v. State,* 294 S.W.3d at 535 (quoting Restatement (Second) of Judgments §

27 cmt. d.). An issue can be "actually litigated" as long as it was "properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding." *Id.*

Although the state court summary judgment was entered by default against Ms. Bennett, it nonetheless counts as "actually litigated" in Tennessee for all well-pleaded allegations. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack),* 65 F.3d 51, 54 (6th Cir.1995) (citing and quoting *Lawhorn v. Wellford,* 179 Tenn. 625, 168 S.W.2d 790, 792 (Tenn.1943)). The Sixth Circuit held specifically in *Bursack*:

> Even a default judgment satisfies Tennessee's "actually litigated" requirement: A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised ... and such issues cannot be relitigated in any subsequent action between the parties and their privies.

*Id.* A default judgment "is generally considered an admission of all the properly pleaded material allegations of fact in the complaint, except the amount of unliquidated damages." *H.G. Hill Realty Co., LLC. v. Re/Max Carriage House, Inc.,* 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013) *citing Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 101 (Tenn. 1984).

Even if no answer is filed, a default has the effect "of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleading and fair inferences therefrom." *Id.* There is little wiggle-room for a debtor defending a nondischargeability action based on fraud when a previous state court fraud judgment has been entered against the debtor because Tennessee's fraud elements are "virtually identical" with the Bankruptcy Code's nondischargeabilty provisions for fraud.

In this case, it is questionable that SunTrust could meet Tennessee's "actually litigated" requirement since, at least in the default setting, this test is tied to the idea that the litigation must be initiated by a "well-pleaded" or "properly pleaded" complaint. If SunTrust's complaint can be considered sufficient as it relates to the fraud allegations, it could only be because of the fairly loose concept of "notice pleading." But to conclude that the fraud claim was "well-pleaded" would totally ignore the meaning of "well." If use of the word "fraud" is all it takes to constitute a "well-pleaded" fraud claim, then the "well" requirement is pointless.

The state court complaint against Ms. Bennett contained only one reference to "fraud" — "Defendant obtained this money by false pretenses, a false

7

Case 3:14-ap-90079 Doc 22 Filed 08/22/14 Entered 08/22/14 07:43:33 Desc Main
Document Page 7 of 13

representation, or actual fraud." Essentially, all SunTrust did was include this single allegation, echoing the language of the Bankruptcy Code rather than Tennessee tort law,[3] while otherwise focusing the allegations in the complaint on liability under contract or U.C.C. law. The complaint would not likely survive a motion to dismiss for failure to plead fraud with particularity since it includes no allegation of intent to deceive or any of the other specific elements of the tort.[4]

Although Tennessee cases often refer to "well-pleaded" complaints in the context of upholding the preclusive effect of default judgments, the case law does not define what that means nor does it indicate whether a mere allegation of fraud without more would be sufficient to satisfy the "well-pleaded" test.[5] This Court is expected to apply collateral estoppel the way Tennessee courts would apply it. That is difficult to ascertain as it relates to the "well-pleaded" complaint language since Tennessee courts have frequently used those words but seldom if ever applied them to particular facts.

If this "well-pleaded complaint" test is to have any consequences, the principle must have enough substance to require something more than a single reference to "fraud." SunTrust has not met that test if it is applied in the manner this Court believes it should be applied by Tennessee courts. However, regardless of how the "actually litigated" language is interpreted, SunTrust fails for a separate reason. It did not meet its burden in showing that the fraud finding in the state court order was "necessary to the judgment" – a test that is independent of the requirement that the issue be "actually litigated."

---

[3] As explained more fully later, most of this phrase does not track the language of any actual Tennessee tort.

[4] While Tennessee Rule of Civil Procedure 8.01 requires a pleading stating a claim for relief contain "a short and plain statement of the claim showing the pleader is entitled for relief …," Rule 9.02 requires in fraud allegations that "the circumstances constituting fraud … shall be stated with particularity." Further, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." In this case, intent was not averred at all, generally or otherwise.

[5] "Well-pleaded complaint" is not specifically defined in Tennessee law, but Black's Law Dictionary defines "well-pleaded" to mean:
> ***well-pleaded complaint.*** (1954) An original or initial pleading that sufficiently sets forth a claim for relief — by including the grounds for the court's jurisdiction, the basis for the relief claimed, and a demand for judgment — so that a defendant may draft an answer that is responsive to the issues presented.

Black's Law Dictionary (9th ed. 2009), Complaint.

8

### 2. Necessary to the Judgment

Tennessee will not give preclusive effect to any finding that was not "necessary to the judgment." "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect." *Mullins v. State*, 294 S.W.3d at 535 (Tenn. 2009); *Spivey v. King, 2012 WL 344968 (Tenn. Ct. App. Feb. 2, 2012)* (same); see also *Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987) (rejecting collateral estoppel where multiple claims were involved and record did not disclose what issues were submitted to the jury — the jury's verdict was only a "general verdict.").

"Necessary to the judgment" is found frequently throughout Tennessee case law in the context of issue preclusion, but it is another phrase not precisely defined by the state's courts. Other jurisdictions, however, have applied standards for such an inquiry. The definitions used in many other jurisdictions appear to comport with the overall approach used by Tennessee courts regarding issue preclusion. Those standards are all rooted in notions of fairness.

Many of the cases addressing the necessity principle reflect "nothing more than a straightforward inquiry whether a particular issue was merely incidental to the first judgment." 18 Charles Allen *Wright & Arthur R. Miller*, FEDERAL PRACTICE AND PROCEDURE § 4421 (2nd ed, updated April 2014). The underlying concept is that parties "should be estopped only on issues they actually deem important, and not on incidental matters." *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,* 453 F.2d 1177, 1183 (3rd Cir.1972); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1115 (9th Cir.1999) ("Preclusive force [only] attaches to determinations that were necessary to support the court's judgment in the first action. Litigants conversely are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action.").

"Because litigants are likely to view an issue that is necessary to the resolution of a case as important and to litigate it vigorously, it is fair to give such a determination preclusive effect." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 251 (3rd Cir. 2006); see *Wickham Contracting Co., Inc. v. Bd. of Educ. of City of New York,* 715 F.2d 21, 28 (2d Cir.1983) (noting that the necessity rule ensures that "parties to litigation have sufficient notice and incentive to litigate matters in earlier proceedings which may bind them in subsequent matters").

"The necessity requirement also ensures that preclusive effect is not given to determinations that did not 'receive close judicial attention,'" *Jean Alexander*

*Cosmetics, Inc.*, 458 F.3d at 252 *quoting Commercial Assocs. v. Tilcon Gammino, Inc.,* 998 F.2d 1092, 1097 (1st Cir.1993), or that were unappealable by virtue of being incidental to a decision, *see* Restatement (Second) of Judgments § 27 cmt. h. *See also Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1168 (5th Cir. Dec.1981) ("[A]n immaterial issue may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment .... [and] a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal."); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1571 (Fed. Cir. 1983) (stating that the purpose of the "necessary to the judgment" requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation).

Thus, there is ample authority on what "necessary to the judgment" means. Courts throughout the country that have addressed the question in detail all rely upon a common theme – that it simply would be unfair to saddle a party with preclusive effect regarding a finding not receiving close judicial attention or that was merely incidental, collateral or nonessential to the judgment. While Tennessee appellate courts have not had occasion to rule quite so precisely on the issue, the thrust and tone of the many Tennessee decisions dealing with collateral estoppel would indicate that Tennessee would follow what seems to be the clear majority approach.

In this case, the inquiry thus becomes whether the state court's single reference to liability for fraud on the part of Ms. Bennett would satisfy the test of being necessary to the judgment or whether instead it is merely incidental, collateral, nonessential, or did not receive close judicial attention. A review of the judgment and the underlying complaint makes it clear that the finding was not "necessary to the judgment" if these widely accepted standards are applied.

The very limited factual findings in the judgment relate to the proof demonstrating that there is contractual and U.C.C. liability based upon Ms. Bennett's receipt, endorsement and presentation of two bad checks that caused an overdraft – actions that would result in her liability regardless of any fraudulent intent. What is missing from the judgment is anything resembling a recitation of facts or findings regarding the key elements of a fraud claim.[6]

---

[6] The judgment does state that the instruments themselves were fraudulent, but that would be true based upon the undisputed fact that the payor wrote bad checks. The fraudulent nature of the instruments or even any implied fraudulent intent on the part of the payor in writing the checks would not be determinative of the intent of Mrs. Bennett in endorsing and presenting the checks to

10

The only reference to fraud is found in the last sentence of the order, while the rest of the judgment focuses on facts supporting the other causes of action. In that final sentence, the state court order awards SunTrust a judgment "for monies obtained by false pretenses, a false representation, or actual fraud." This phrase is distinctive in two respects. First, it is the precise language of 11 U.S.C. § 523(a)(2)(A). Second, it is a phrase, at least taken as a whole, which does not precisely correspond with any actual Tennessee tort.

"False pretenses" is not a recognized tort in Tennessee.[7] "False representation" is not, in and of itself, a tort under Tennessee law but rather an element of the tort of fraudulent misrepresentation/fraud.[8] "False representation" by itself, without the requisite intent, will not give rise to a fraud-related claim under Tennessee law. That leaves the final two words – "actual fraud." Fraud is clearly a tort recognized in Tennessee and has a definite meaning outside the broader phrase used by the state court in the judgment.[9]

In summary, the state court judgment ultimately concludes that the defendant is liable for (a) "false pretenses" -- a tort that no longer exists in Tennessee or (b) "false representation" – which is only one element of the tort of

---

SunTrust. Instruments do not form intent. Only the people involved in a transaction have a relevant state of mind, and, in this case, there is no allegation or court finding about the endorser's intent.

[7] False pretense was a criminally punishable offense under Tennessee Code Annotated (T.C.A. § 39-3-901 (1982)) but that statute was repealed when the offense was merged into the offense of theft. *See State v. Brewer*, 932 S.W.2d 1, 18, n. 21 (Tenn. Crim. App. 1996). The criminal elements of false pretense contained portions of the elements of fraud, but there is no separate civil cause of action for "false pretenses" under Tennessee law.

[8] The terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous and may be used interchangeably under Tennessee law. *Concrete Spaces, Inc. v. Sender,* 2 S.W.3d 901, 905 n.1 (Tenn. 1999).

[9] In order to state a claim for fraud, a plaintiff must allege facts supporting the following essential elements: (i) the defendant made a representation of an existing or past fact; (ii) the representation was false when made; (iii) the representation was in regard to a material fact; (iv) the false representation was made either knowingly or without belief in its truth or recklessly; (v) plaintiff reasonably relied on the misrepresented material fact; and (vi) plaintiff suffered damage as a result of the misrepresentation. *Diggs v. Lasale Nat. Bank Ass'n*, 387 S.W. 3d 559 (Tenn. Ct. App. 2012). *Metro. Gov't of Nashville & Davidson County v. McKinney,* 852 S.W.2d 233, 237 (Tenn. Ct. App.1992); *see also First Nat'l Bank v. Brooks Farms,* 821 S.W.2d 925, 927 (Tenn. 1991); *Lopez v. Taylor,* 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005).

11

fraud and is not actionable in and of itself, or (c) actual fraud – a recognized tort in Tennessee. Since the first two elements of that phrase do not serve as a basis for liability under state law and since the state court cannot make a finding of nondischargeability merely by parroting the language of Section 523(a)(2)(A), the only phrase that really has potential meaning for collateral estoppel purposes is the third item in the list – "actual fraud."

Obviously, it would make no sense to give preclusive effect to the entire phrase ("false pretenses, a false representation, or actual fraud") if doing so would mean recognizing causes of action that do not even exist in Tennessee. In looking at whether the state court finding received "close judicial attention," it simply cannot be ignored that a significant part of the language used by the state court is totally inoperative as a basis for civil liability in Tennessee. It is much more reasonable to conclude that this phrase was merely incidental, collateral or nonessential to the ultimate judgment.

The complaint provides no further assistance in determining the necessity of the fraud finding to the state court's judgment. Like the judgment, and as noted earlier, the complaint too contains the single phrase "false pretenses, a false representation, or actual fraud" but without any allegations to support a fraud-related cause of action against Ms. Bennett. There are sufficient allegations and findings to show that Ms. Bennett is liable as an endorser under the U.C.C. or under her contract with SunTrust, but there is no mention of intent to deceive.

Faced with a complaint and judgment that omit any mention of the legal elements of fraud and include no factual findings critical to a fraud determination, this Court concludes that the reference to fraud did not "receive close judicial attention" and was merely incidental, collateral and nonessential to the judgment.[10]

---

[10] Even if the record was clearer about the fraud claim, there is a reasonable argument that collateral estoppel should fail because the fraud was, at most, a secondary ground. It is clear, however, from the complaint and the judgment that the contract and U.C.C. liability formed the primary basis of the debtor's liability. *See In re Clark*, 2009 WL 693164 (Bankr. E.D. Tenn. March 11, 2009) ("Because the State Court could have found for the Bank on the breach of contract action without concluding that Clark engaged in fraudulent conduct, the Bank's fraud claim was not necessary or essential to the judgment.").

The Sixth Circuit "has not decided whether alternative grounds for a judgment are each 'necessary to the outcome' for the purposes of issue preclusion in a subsequent case involving only one of the grounds." *National Satellite Sports v. Eliadis*, 253 F.3d 900, 910 (6th Cir. 2001). It has determined, however, that where "one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *Id.*

It is not difficult to tell what was primary and what was secondary in this case. As

Case 3:14-ap-90079   Doc 22   Filed 08/22/14   Entered 08/22/14 07:43:33   Desc Main
Document      Page 12 of 13

The party asserting the doctrine of collateral estoppel in seeking to bar litigation of an issue has the burden of proving that the issue was necessary to the judgment. *Dickerson v. Godfrey*, 825 S.W. 2d 692, 695 (Tenn. 1992). Based on the state court complaint and judgment, the only relevant documents provided by the parties, this Court cannot conclude that the "fraud" finding was necessary to the state court judgment. SunTrust failed to meet its burden. Accordingly, summary judgment cannot be granted based on principles of issue preclusion.

## CONCLUSION

The Court hereby denies the cross-motions for summary judgment. The Court has previously entered an Order reflecting this ruling at Docket Number 17, and that order is hereby incorporated by reference.

---

previously noted, the very limited factual findings relate to the proof demonstrating that there is contractual and U.C.C. liability based upon the defendant's receipt, endorsement and presentation of bad checks that caused an overdraft. By contrast, there are no factual findings relating to the elements of fraud, and the reference to fraud is essentially an add-on in the last sentence. That being the case, the primary ground for relief has to be considered the U.C.C./contract claim rather than the fraud cause of action.

This primary/secondary analysis is not necessarily a common approach applied by other courts so, even though it has been used by the Sixth Circuit, it is not clear whether Tennessee Courts would adopt that type of standard. This case can be determined based on the more traditional and accepted test of "necessary to the judgment" based on whether the finding was merely incidental, collateral or nonessential, so it is unnecessary to reach a conclusion about the soundness of the primary/secondary test in this context.

13

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:14-ap-90079   Doc 22   Filed 08/22/14   Entered 08/22/14 07:43:33   Desc Main
Document      Page 13 of 13